# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Case No. 2:12-cr-00435-GMN-CWH |
| vs. ) | **FINDINGS AND RECOMMENDATION** |
| DAVID SAPPER, ) | |
| Defendant. ) | |

      This matter is before the Court on Defendant David Sapper's Motion to Dismiss for Outrageous Government Conduct (#13), filed on February 15, 2013. The Court also considered the Government's Response (#17), filed on March 11, 2013 and Defendant's Reply (#18), filed on March 18, 2013.

## BACKGROUND

      On February 24, 2012 at 12:33 p.m., a person later identified as Defendant David Sapper ("Sapper") posted a personal ad on Craigslist under the "casual encounters" section seeking a female for a sexual encounter. (#13, Ex. C). The ad identified the poster as "Thick, well endowed, white, handsome man looking for fun - m4w- 30." (*Id.*) The text of the post read: "I'm a sane, discreet man that would love to blow off some steam. I'm completely D&D free, have had a vasectomy, and am very clean. I'm tall, h/w/p and would love to show you a great time. Drop me a line with a picture or two, lets talk." (*Id.*) The post also included a sexually explicit photo of the male genitalia. (*Id.*)

      Henderson Police Detective Wayne Nichols ("Detective Nichols"), through his training and experience, knew that Craigslist had been a forum where adults would post ads in the hopes of initiating communication with juveniles. (#13, Ex. A at 5). On February 24, 2012 at 4:48 p.m., Detective Nichols, posing as a 14 year-old girl ("Responder"), responded to the personal ad asking

whether the poster would be interested in someone younger. (#13, Ex. D). Sapper responded "Always" and inquired as to the age of Responder, also asking for photos. (*Id.*) After 3 hours and having not received a response, Sapper again emailed asking whether Responder had changed her mind. (*Id.*) Responder replied saying she was fourteen years old. (*Id.*) Despite this, Sapper sent a photo of himself and asked for a photo, to which Responder sent a photo of a girl. (*Id.*) The photo was a forensically digitally regressed photo intending to depict a minor. In response to receiving the photo, Sapper replied that he would be interested in having sex with Responder.[1] (*Id.*)

The conversation quickly turned sexual with Sapper asking Responder if she would be interested in having sex without a condom, performing oral sex, and having anal sex. (*Id.*) Multiple times Responder included her age in the response. Replying to the question about having sex without a condom, Responder stated "im not tryin 2 b on mtvs 14 and preggers," putting Sapper on notice a second time that he was communicating with a minor. Replying to the question about anal sex, Responder stated "im 14 not some porn staR! (sic)," again putting Sapper on notice that he was communicating with a minor. (*Id.*) Sapper also asked when they should meet and how soon Responder could meet him. (*Id.*) Responder stated that she would have to "sneek out" (sic) and "plot [her] escape" from the house because she lived with her aunt. (*Id.*) Responder said she would suggest a time "after [she got] outta school." (*Id.*) After coordinating a meeting time and place, Sapper instructed Responder to "[d]ress in something easy to take off, like a sweat suit with no underwear/bra" and to "hop in the car" and begin performing oral sex on him. (*Id.*) Sapper and Responder agreed to rendezvous outside a Subway in a shopping center in Henderson, Nevada. (*Id.*) Sapper told Responder he would be driving a black four-door sedan. (*Id.*)

Close to the time of the scheduled meeting time, Detectives set-up surveillance near the Subway and "observed a black Hyundai Genesis with Nevada dealership plates pull into the parking lot" and circle the lot three times, each time slowing in front of the Subway with the driver looking into the dining establishment. (#13, Ex. F). Detectives conducted a traffic stop based on

---

[1] 18 U.S.C. § 2422(b) imposes criminal liability when the defendant believes he is inducing a minor, even though the object of his inducement is actually an adult. *See United States v. Meek*, 366 F.3d 705, 717 (9th Cir. 2004).

reasonable suspicion. (*Id.*) Detectives recognized the driver as the same person from the photo sent earlier to the Responder. (*Id.*) The driver was identified as Sapper. (*Id.*) Sapper was arrested for using technology to lure a minor and was transported to the Henderson Police Department. At the station he was read his *Miranda* rights and exercising those rights, refused to answer questions. Sapper did confirm his current address, which was listed on his driver's license.

Detective Nichols obtained a search warrant for the residence. (*Id.*) Detectives also discovered Sapper was a twice convicted felon with convictions in 1997 and 1998. (#13, Ex. H). During the service of the search warrant at the residence on Tina Chan, Sapper's fiancé, detectives noticed several firearms at the residence. One was in a partially opened gun bag that had Sapper's business card affixed to the outside. (*Id.*) Chan told officers that, when she began dating Sapper in 2010, Sapper already owned several guns and that she purchased additional firearms for Sapper using his money. (*Id.*) She also explained that many of the guns were located throughout the house because the couple had just gone shooting together. (*Id.*) The detectives obtained a piggy-back search warrant referencing the prohibited person in possession of a firearm and collected eight firearms from the residence. (*Id.*) Detectives also made contact with Sapper's employer, Henderson Hyundai. (*Id.*) Frank Maione, the point of contact, confirmed Sapper had an office and voluntarily turned over Sapper's personal computer kept at the business. (*Id.*) Detectives obtained another warrant to forensically examine all electronics recovered from the residence and place of business. (*Id.*)

On November 14, 2012, Defendant David Sapper ("Sapper") was indicted for one count of Coercion and Enticement, in violation of 18 U.S.C. §2422(b), and one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §922(g)(1) and §924(a)(2).

## **DISCUSSION**

Sapper seeks to dismiss the indictment based on "outrageous government conduct" pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution. *See United States v. Russell*, 411 U.S. 423 (1973). Such assertion requires the Court to determine if Sapper's constitutional rights will be violated if prosecution is allowed to proceed. Consequentially, it is a question of law to be decided by the Court, not an issue for the jury. *See United States v. Sotelo-*

*Murillo*, 887 F.2d 176, 182 (9th Cir. 1989) (*citing United States v. Montilla*, 870 F.2d 549, 551 n.1 (9th Cir. 1989); *see also United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir. 1978)). The Court views "the evidence in the light most favorable to the government." *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003), *cert. denied*, 540 U.S. 995 (2003).

### I.     Outrageous Government Conduct Standard

The notion that government misconduct could warrant dismissal of an indictment originates in the dicta of *United States v. Russell*, 411, U.S. 423, 431-32 (1973). In *Russell*, the Supreme Court noted that there may be a "situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* Subsequently, the Supreme Court posited that it has the power to bar conviction of a defendant on due process grounds if government conduct reaches a "demonstrable level of outrageousness." *Hampton v. United States*, 425 U.S. 484, 491-95 (1976).

"Outrageous government conduct refers to behavior of investigators." *United States v. Garza-Juarez*, 992 F.2d 896, 903 (9th Cir. 1993). "The government's conduct may warrant a dismissal of the indictment if that conduct is so excessive, flagrant, scandalous, intolerable and offensive as to violate due process; the trial court may also dismiss the indictment in the exercise of general supervisory powers." *Id.* at 904. However, the successful assertion of this notion is extremely rare. *See United States v. Ryan*, 548 F.3d 782, 789 (9th Cir. 1976) (explaining that "the due process channel which *Russell* kept open is a most narrow one"). To be sure, the only successful assertion of outrageous government conduct in the Ninth Circuit was in *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971), which predates *Russell* and *Hampton*. In *Greene*, outrageous government conduct was found when the government agent contacted the defendant, urged him to run an illegal still, provided materials for the still, employed veiled threats to convince him to keep the still running, and was the sole customer. *Id.*

As a result, to "secure the dismissal of an indictment on due process grounds, 'a defendant must meet an extremely high standard.'" *United States v. Nobari*, 574 F.3d 1065, 1081 (9th Cir. 2009) (*quoting United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991)). The Defendant "will not succeed unless the governmental conduct challenged is so grossly shocking and so outrageous as to

1  violate the universal sense of justice." *Smith*, 924 F.2d at 897.  In addition, "the government's
2  involvement must be *malum in se* or amount to the engineering and direction of the criminal
3  enterprise from start to finish." *Id.*  However, the standard "is not met when the government
4  merely infiltrates an existing organization, approaches persons it believes to be already engaged in
5  or planning to participate in the conspiracy, or provides valuable and necessary items to the
6  venture." *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003).

7  The Ninth Circuit has elucidated five factors to consider when determining whether
8  government conduct was permissible including: "(1) the defendant was already involved in a
9  continuing series of similar crimes, or the charged criminal enterprise was already in progress at the
10 time the government agent became involved; (2) the agent's participation was not necessary to
11 enable the defendants to continue the criminal activity; (3) the agent used artifice and stratagem to
12 ferret out criminal activity; (4) the agent infiltrated a criminal organization; and (5) the agent
13 approached persons already contemplating or engaged in criminal activity." *United States v.
14 Bonanno*, 852 F.2d 434, 437-38 (9th Cir. 1988).  While *Bonanno* provides five examples of
15 situations in which the government conduct is permissible, it is not a "reverse-checklist," such that
16 "if none of these five situations occurred, then, as a matter of law, the government conduct has been
17 outrageous." *United States v. Velasquez-Lopez*, 2010 WL 1996605 *2 (D. Ariz. May 29, 2010),
18 *aff'd* No. 11-10130, 2013 WL 646843 (9th Cir. Feb. 13, 2013).

19 **II.   Outrageous Government Conduct Application**

20 Sapper alleges that this case falls into the narrow category of cases that warrants dismissal
21 for outrageous government conduct.  Specifically, Sapper argues that "the Henderson police
22 department's acts rose to the level of outrageous government conduct" because "Detective Nichols
23 initiated contacted" with Sapper based on a personal ad that "had no outward indication that the
24 poster was seeking to contact a minor." (#13 at 4).  Additionally, Sapper argues that because
25 "Craigslist's very terms of use prohibit minors from using the website," it "shocks the conscience"
26 that a police officer would "submit a reply to a personals ad" posing as minor without any reason or
27 suspicion. (*Id.*)  Further, Sapper argues that there is a legitimate question as to whether the picture
28 Detective Nichols submitted is sufficiently "forensically regressed" to "portray a minor." (*Id.*)

5

Finally, Sapper argues that the government conduct failed to meet any *Bonanno* factor, and thus, the government conduct was outrageous.[2]

### A.   *Bonanno* Factors

Sapper requests that the Court apply the *Bonanno* factors as a reverse-checklist. He argues that the Court should find the government conduct outrageous because none of the five factors are met. The Government counters that not only were all five factors met, but also, Detective Nichols' actions did not "amount to the engineering and direction of the criminal enterprise from start to finish." The Government argues that Detective Nichols merely "injected himself as an undercover agent into [Sapper's] ongoing attempt to lure a young girl for sexual contact."

The Court is not convinced that Sapper's reading of *Bonanno* is proper. The Court finds that the *Bonanno* factors only help guide its totality of the circumstances analysis. The Government need not meet every single factor before its conduct can be deemed acceptable. In fact, *Bonanno* cannot be a conjunctive elements list that the government must meet to defend against an outrageous government conduct claim for two main reasons. First, the factors overlap. Factor one, "the charged criminal enterprise was already in progress at the time the government agent became involved," and factor five, "agent approached persons already . . . engaged in criminal activity," overlap. As a result, the inclusion of both as "elements" rather than factors, would render one of the two superfluous. Second, the Court agrees with the *Velasquez-Lopez* Court's adoption of the reasoning in *United States v. Simpson*, 2010 WL 1611483, explaining:

> [The] analysis regarding outrageous government conduct is a totality of the circumstances test, and the nonexistence of one of the five factors, while informative, does not dictate that the government's conduct was outrageous. *See United States v. Gurolla*, 333 F.3d 944, 950–51 (9th Cir. 2003) (finding no outrageous government conduct while addressing only the first of the five factors). The test in *Williams* does not say if, *and only if*, the five *Bonanno* factors are met, the government conduct is acceptable. Rather, it appears the factors are guidelines that provide a means to analyze the government's behavior. To

---

[2] Sapper also argues that, because of the outrageous conduct in the primary charge of coercion and enticement, any evidence pertaining to the charge of felon in possession of a firearm should be excluded as fruit of the poisonous tree. To that end, Sapper contends that the ancillary felon in possession charge should also be dismissed. However, as Sapper has not challenged the validity of the search warrant, the Court will not address or reach any conclusions relating to the search or ancillary felon in possession charges in this order.

> conclude that the government's conduct was unacceptable, or "outrageous" if one of the factors is not met would require a strict application of the factors in every instance of questioned government conduct. However, outrageous government conduct is to be analyzed by considering the totality of the circumstances in each case.

In considering the *Bonanno* factors, the Court finds that the factors heavily weigh in favor of finding the government's actions to be permissible. Here, the government conduct was Detective Nichols approaching Sapper who Detective Nichols believed to be already engaged in or planning to participate in the crime. *Gurolla*, 333 F.3d at 950. First, Sapper had posted a "casual encounters" personal ad on Craigslist. Detective Nichols knew that Craigslist is a forum where adults are known to post ads to initiate contact with minors. Detective Nichols did not encourage Sapper to post the ad. Rather, Detective Nichols approached, investigated, and enticed Sapper who had already posted the ad and who plausibly had been engaging in or contemplating criminal activity.

Second, Detective Nichols did nothing to enable Sapper to continue the enticement of the minor because even after learning that the Responder was 14 years-old, Sapper took steps to further the sexually explicit conversation. Moreover, despite several references to her age, her school, and having to sneak out of her aunt's house to meet him, Sapper continued to escalate the sexual nature of the conversation. Sapper could have ended the conversation and association at any time. But rather, all questions relating to the nature of the rendezvous were posited by Sapper, not Responder

Third, Detective Nichols used artifice and stratagem, posing as a 14 year-old girl, to discover the criminal activity. Sapper plausibly had been contemplating or had engaged in criminal activity at the time he was approached. Thus, most of the *Bonanno* factors are met and the government conduct was not outrageous.

### B.    Totality of the Circumstances

The Court finds that, based on the totality of the circumstances, the Detectives' actions do not "shock the conscience." The Court is not persuaded that an undercover agent would "submit a reply to a personals ad" posing as minor without any reason or suspicion. The Ninth Circuit has explicitly rejected the notion that reasonable suspicion is required before agents can begin an undercover operation. *United States v. Garza–Juarez*, 992 F.2d 896, 904 (9th Cir. 1993) ("In

partially vacating the three-judge court's opinion, we follow four of our sister circuits in explicitly rejecting a 'reasoned grounds' requirement for investigation of an individual under the due process clause . . . Therefore, any inability to state reasons for investigating Joe Juarez does not represent a constitutional violation.")  Accordingly, any objections to the reason the investigation began are unpersuasive.  Moreover, in a similar case, the Ninth Circuit found that sending questionnaires to persons whom the government believed might be interested in child pornography and contacting and investigating those who replied to the questions in a certain manner was not outrageous government conduct.  *United States v. Mitchell*, 915 F.2d 521, 525 (9th Cir. 1990).[3]  Here, Detective Nichols used his knowledge that Craigslist had been a forum where adults would post ads in the hopes of initiating communication with juveniles.  Similar to *Mitchell*, where the government sent questionnaires and investigated those who replied, Detective Nichols sent response emails indicating he was younger and began investigating Sapper who replied that he was still interested,

---

[3] Additionally, there is a plethora of Ninth Circuit and other case law that documents the refusal to apply the outrageous government conduct theory to similar and even more questionable situations.  As summarized in an unpublished Ninth Circuit decision, *United States v. Wegman*, 917 F.3d 1307, 1990 WL 170409 at *4 n. 1 (9th Cir. Nov. 6, 1990), the following cases are examples of conduct deemed acceptable: *United States v. Luttrell*, 889 F.2d 806, 811–14 (9th Cir. 1989) (counterfeit credit card sting operation not outrageous government conduct); *United States v. Slaughter*, 891 F.2d 691, 695–96 (9th Cir. 1989) (government use of informant to strike up personal relationship with defendant and persuade him to sell cocaine not outrageous conduct); *United States v. Bonnano*, 852 F.2d 434, 437–38 (9th Cir. 1988) (FBI informant posing as potential investor in fraudulent scheme did not constitute outrageous government conduct); *United States v. Citro*, 842 F.2d 1149, 1152–53 (9th Cir. 1988) (counterfeit credit card sting operation not outrageous government conduct); *United States v. Simpson*, 813 F.2d 1462, 1464–71 (9th Cir. 1987) (FBI manipulating woman into providing sexual favors to lure target into selling heroin not outrageous conduct); *United States v. Emmert*, 829 F.2d 805 (9th Cir. 1987) (FBI approaching college student and offering $200,000 finder's fee for securing cocaine supply for government agent not outrageous conduct); *Shaw v. Winters*, 796 F.2d 1124, 1125–26 (9th Cir. 1986) (food stamp sting operation not outrageous government conduct); *United States v. Wiley*, 794 F.2d 514, 515–16 (9th Cir. 1986) (government activation of scheme to smuggle drugs into prison not outrageous conduct); *United States v. Williams*, 791 F.2d 1383, 1386–87 (9th Cir. 1986) (prison authorities' prior knowledge of escape plans not outrageous conduct); *United States v. Driscoll*, 853 F.2d 84, 85–87 (3d Cir. 1988) (child pornography sting operation not outrageous government conduct); *United States v. Musslyn*, 865 F.2d 945, 946–47 (8th Cir. 1989) (child pornography sting operation not outrageous government conduct). As these cases illustrate, several instances of "questionable" government behavior have been found to fall short of "outrageous" government conduct.

even after learning the Responder was 14 years-old.  Also, Sapper's objection based on the fact that Craigslist's terms of use prohibits minors from using the website ignores the fact that Sapper was put on notice multiple times that he was communicating with a 14 year-old.  Further, Sapper argues that there is a legitimate question as to whether the picture Detective Nichols submitted is sufficiently "forensically regressed" to "portray a minor.  Viewing the facts in the light most favorable to the Government, it can be reasonably said that the picture portrays a 14 year-old girl.  Moreover, as the picture was preceded with Responder's statement that she was 14 years-old, it was reasonable to believe that the picture intended to portray a 14 year-old girl.

Ultimately, the Court finds that Sapper has not presented sufficient evidence to prove that the Government utilized physical or psychological coercion to engineer and direct the criminal enterprise from start to finish in this case.  *See Bonanno*, 852 F.2d 434.  Consequently, Sapper has not carried his burden of proving that the Government's conduct was so outrageous as to violate the "universal sense of justice."  *Smith*, 924 F.2d at 897.  Accordingly, the Court will recommend that Sapper's Motion to Dismiss be denied.

Based on the foregoing and good cause appearing therefore,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant David Sapper's Motion to Dismiss for Outrageous Government Conduct (#13) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

1   DATED this 15th day of April, 2013.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**